## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|                                          |     |                            |
|------------------------------------------|-----|----------------------------|
| UNITED STATES OF AMERICA,                | )   |                            |
|                                          | )   | **CRIMINAL ACTION**        |
| Plaintiff,                               | )   | **No. 10-20128-01-KHV**    |
|                                          | )   |                            |
|                                          | )   |                            |
| TIJUAN A. LEE,                           | )   |                            |
|                                          | )   | **CIVIL ACTION**           |
|                                          | )   | **No. 14-2368-KHV**        |
| Defendant.                               | )   |                            |
|                                          | )   |                            |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's Motion Under 28 U.S.C. §2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #120) filed July 23, 2014.  For reasons stated below, the Court overrules defendant's motion.

### Factual Background

On October 7, 2010, a grand jury charged defendant with conspiracy to distribute 50 or more grams of crack cocaine (Count 1), one count of being a felon in possession of a firearm (Count 2) and three counts of distribution of crack cocaine (Counts 3-5).  See Indictment (Doc. #1).

On January 24, 2011, defendant appeared for a change of plea hearing and requested a continuance to February 3, 2011.  At the hearing on February 3, 2011, the Court granted defendant's pro se motion to have Kirk Redmond withdraw as defense counsel.  See Doc. #18.  On February 4, 2011, Carl Cornwell entered an appearance on behalf of defendant and filed a motion to continue trial, then set for February 7, 2011.  The Court granted defendant's motion and continued the trial to March 14, 2011.  Doc. #23.

On February 25, 2011, the Court held a change of plea hearing, the details of which are set forth in the analysis section below.  Defendant entered into a plea agreement in which he agreed to

plead guilty to Count 1 of a superseding information which charged him with conspiracy to manufacture, to possess with intent to distribute and to distribute five grams or more of "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).  Count I of the original indictment exposed defendant to a 10-year minimum sentence (20-year minimum sentence in the event he had a prior felony drug offense) with a maximum sentence of life imprisonment.  Count I of the superseding information carried a five-year minimum sentence and a maximum sentence of 40 years.

The plea agreement contained the following provision:

11.  Waiver of Appeal and Collateral Attack. The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release.  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

Doc. #30 at 7-8.

On March 2, 2011, Mr. Cornwell sent defendant a letter in which he noted that after the plea

hearing, defendant said that he felt that he had been "railroaded."  In a letter on March 10, 2011, defendant told Mr. Cornwell that he had learning and memory problems and asked for a copy of the plea agreement "so I will know what you had me sign."  Doc. #64-2 at 2.

On May 24, 2011, the Probation Office issued an initial Presentence Investigation Report ("Initial PSR") (Doc. #32) which calculated a total offense level of 25 and a criminal history category of III, for a sentencing guideline range of 70 to 87 months.

On June 16, 2011, Mr. Cornwell filed a motion to withdraw as counsel.  Doc. #35.  At the sentencing hearing on June 22, 2011, however, defendant stated that he wanted Mr. Cornwell to continue to represent him.  The government then presented testimony that connected defendant to numerous drug sales.  Defendant took the stand and on cross-examination admitted to many drug sales.  Based on the evidence presented at this hearing, the Court requested an amended PSR and continued the sentencing hearing to July 6, 2011.

On June 30, 2011, the Probation Office issued an Amended PSR (Doc. #41) which included a revised drug quantity of 840 grams, for a total offense level of 38, criminal history category of III and guideline range of 293 to 365 months.

On July 6, 2011, the Court sustained Mr. Cornwell's oral motion to withdraw as counsel. On July 12, 2011, defendant filed two pro se motions to withdraw his plea of guilty.  On August 17, 2011, the Court appointed Jeffrey Morris to represent defendant.  On October 3, 2011, defendant filed a renewed motion to withdraw his guilty plea.

On November 28, 2011, defendant testified at a hearing on the motion to withdraw his plea. Defendant testified that he has a learning disability and that he had earned his GED while incarcerated.  He testified that before the plea hearing, Mr. Cornwell did not review with him the

superseding information, the plea agreement or the petition to enter a plea of guilty.[1]  Defendant

testified that Mr. Cornwell told him to falsely tell the Court that he had reviewed those documents.

Defendant stated that he was confused during the plea hearing and did not understand that the

superseding information charged him with conspiracy.  Defendant testified that he thought that he

was pleading to simple possession.  He also asserted that he did not understand the potential effect

of relevant conduct on his sentence.

      The Court found that viewed as a whole, the plea colloquy did not demonstrate that

defendant was so confused about the potential sentence as to render his plea unknowing or

involuntary.  Based on all relevant factors, the Court found that defendant did not show a "fair and

just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).

      On March 30, 2012, the Court sentenced defendant to 235 months in prison.  Defendant

appealed, asserting that the Court erred in not permitting him to withdraw his guilty plea, that the

Court relied on unreliable testimony in making relevant conduct findings, and that trial counsel was

ineffective during sentencing.  The Tenth Circuit rejected defendant's challenge to the guilty plea

and plea agreement on the merits, and found that the appeal waiver in the plea agreement barred his

challenge to the relevant conduct findings.  See United States v. Lee, 535 F. App'x 677 (10th Cir.

Sept. 5, 2013).[2]

      On July 23, 2014, defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255.

---

    [1]      Defendant testified that although Mr. Cornwell told the Court that he had visited with defendant for two hours the day before the plea hearing, in fact Mr. Cornwell did not speak with him for that long.

    [2]      On February 9, 2015, the Court filed an order reducing defendant's term of imprisonment from 235 months to 188 months under 18 U.S.C. § 3582(c)(2).  See Doc. #136.

Liberally construed, defendant's motion alleges that (1) the "superseding indictment" was fatally defective because it failed to charge an offense; (2) the Court lacked subject matter jurisdiction; (3) Mr. Cornwell provided ineffective assistance of counsel; (4) the Court imposed an illegal sentence and (5) appellate counsel was ineffective for failing to raise these issues.

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

### Analysis

### I.      Whether The "Superceding Indictment" Was Fatally Defective

Defendant first asserts that the "superceding indictment" was defective because it was multiplicious and failed to charge an offense under 21 U.S.C. § 841(b)(1)(B) and (b)(1)(C). As a preliminary matter, the government points out that defendant pled guilty to a superceding *information* rather than a superceding indictment. Defendant appears to argue that the Court erred in basing his sentence on a drug quantity other than the specific quantity charged. Courts have firmly rejected this argument. See United States v. Foy, 641 F.3d 455, 469 (10th Cir. 2011) (sentencing court may consider quantities not alleged in calculating base offense level, provided drugs were part of same course of conduct or common scheme or plan as offense of conviction); United States v. Smith, 929 F.2d 1453, 1459 (10th Cir. 1991) (quantity of drugs not specified in charge properly included in determining base offense if part of "same course of conduct") (quoting U.S.S.G. § 1B1.3, comment at 1.19); United States v. Harris, 903 F.2d 770, 778 (10th Cir. 1990) (sentencing court properly considered 801 pounds of marijuana involved in crime but not charged);

cf. United States v. Jones, 235 F.3d 1231, 1237 (10th Cir. 2000) (in considering quantity of drugs not charged in indictment, district court cannot sentence defendant beyond statutory maximum).

**II.      Whether The Court Lacked Subject Matter Jurisdiction**

Defendant appears to assert that the Court lacked subject matter jurisdiction because a grand jury did not indict him on a charge for which he was sentenced. As noted, however, defendant waived his right to indictment by a grand jury. Moreover, under the federal criminal code, the Court clearly had subject matter jurisdiction to preside over the case, and defendant's assertion to the contrary is simply wrong. United States v. Tony, 637 F.3d 1153, 1158 (10th Cir. 2011) (18 U.S.C. § 3231 provides subject matter jurisdiction for every federal criminal prosecution); Hugi v. United States, 164 F.3d 378, 380 (7th Cir. 1999) (no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts); see 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States"). Here, defendant was charged with violating the laws of the United States, 21 U.S.C. §§ 841 and 846, and federal district courts have original jurisdiction over all offenses against the laws of the United States. See United States v. Leroy, 43 F. App'x. 232, 233 (10th Cir. 2002).

**III.      Ineffective Assistance Of Trial Counsel**

Defendant next asserts that Mr. Cornwell provided ineffective assistance during pretrial, plea and sentencing proceedings. Specifically, defendant asserts that Mr. Cornwell provided ineffective assistance because he failed to (1) object to the sufficiency of the indictment; (2) raise the issue of defendant's competency to stand trial and address defendant's learning problems; (3) adequately prepare and provide advice for the plea hearing and (4) investigate and interview witnesses and

review the government file.

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.  In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992).  The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988).  As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

### A.    Failure To Object To Sufficiency Of Indictment

Defendant asserts that Mr. Cornwell was ineffective in failing to object to the sufficiency of the indictment.  As set forth above, the Court has determined that the indictment was sufficient.  Therefore defendant cannot establish that Mr. Cornwell's performance in this regard was deficient or prejudicial.

B.   Failure To Request Competency Determination And To Address Defendant's Learning Disability

Defendant asserts that Mr. Cornwell did not adequately explain the proceedings to him, and that as a result he pleaded guilty without understanding the potential sentence.  After the plea hearing, with assistance, defendant wrote Mr. Cornwell a letter stating that he had a learning disability and therefore had difficulty understanding what he read and what he heard.[3]  Defendant asserts that Mr. Cornwell had a duty to inform the Court of his disability and to request an evaluation of his competency.  Doc. #64-2 at 2.

While defendant asserts that he alerted counsel that he had a learning disability and difficulty understanding the proceedings, he has not alleged sufficient facts to establish that counsel's performance was deficient for failing to raise the issue.  "The presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to knowingly and voluntarily enter a plea as well as aid and assist in his own defense."  Wolf v. United States, 430 F.2d 443, 445 (10th Cir. 1970).

Over the course of more than a year, the Court engaged in several colloquies with defendant. During those interactions, the Court did not perceive any reason to question defendant's competency to stand trial.  Magistrate Judge James P. O'Hara, who presided over at least three hearings including a 30-minute hearing and colloquy with defendant about his request to remove Redmond and allow him to retain Cornwell, also did not express any concerns about defendant's competence or ability to understand the proceedings.  At the plea hearing, the Court initially discerned that defendant appeared to be confused but after further inquiry, found that defendant understood the plea

---

[3]        Defendant points out that he was in special education classes in grade school and did not graduate from high school.

-8-

proceeding and that his plea was knowing and voluntary.[4]   On appeal, the Tenth Circuit noted as

follows.

> Although the record confirms [defendant's] indication of confusion several times
> during the plea hearing, it also reveals the judge's systematic dispelling of that
> confusion.  Each time [defendant] expressed confusion, the judge paused to allow
> him to further confer with counsel.  When [defendant] expressed confusion and
> reluctance over the uncertainties relating to sentencing, the judge explained the
> process to him in considerable detail.  [Defendant] indicated he understood each
> issue and assured the judge his plea was voluntary. He also explicitly confirmed his
> wish to continue with his plea of guilty even after the judge thoroughly explained the
> sentencing process.  Counsel did suggest [defendant] should either accept the plea
> deal or proceed to trial, but we do not see what other option was available.  After
> reviewing the transcript of the plea hearing in its entirety, we have no doubt:
> [defendant's] plea was knowing and voluntary.

United States v. Lee, 535 F. App'x 677, 681 (10th Cir. 2013).

Likewise, the fact that none of the three highly skilled attorneys who represented defendant

in this proceeding raised the issue of competency strongly suggests that defendant was indeed

---

[4]      During the plea hearing, defendant conferred with Mr. Cornwell several times
concerning the potential sentence, and the record reflects some initial confusion about defendant's
possible sentence.  Mr. Cornwell first stated that the best case scenario under the *sentencing
guidelines* would be 37 months, and noted that defendant's relevant conduct could increase his
sentencing range significantly.  The government interjected that the *statutory* minimum was 60
months, and Mr. Cornwell stated that he agreed that the minimum potential sentence was five years.
The Court then asked defendant if that was consistent with his understanding. Defendant responded,
"Yeah, a little bit."  The Court asked defendant if he had any questions about the possible sentence,
and defendant took the opportunity to speak further with Mr. Cornwell off the record.  Mr. Cornwell
told the Court that he had explained to defendant the concepts of relevant conduct and acceptance
of responsibility.  The Court then offered to give counsel more time to visit with defendant.
Mr. Cornwell stated "we've had plenty of time . . . [t]his is the best thing going.  If he doesn't want
to take this thing, then let's just rack them in here and let's go to trial.  I'm just telling you, Tijuan,
this is the best thing to do."  Mr. Cornwell talked further with defendant off the record, and then told
the Court that defendant wanted counsel to pull up his criminal past and tell him "where he's at."
Mr. Cornwell asked the Court to explain to defendant that counsel doesn't have a crystal ball.  The
Court explained the presentence investigation process to defendant and emphasized the uncertainty
in the numbers, and stated that "there's no guarantee."  Id. at 26.  Defendant said that he wanted to
go forward.

competent to enter a plea and assist in his own defense.  See Onate-Sosa, 2011 WL 1878211, at *15 (defense counsel often in best position to discover whether defendant's competency is questionable; failure of counsel to raise issue is compelling evidence that defendant's competency was not really in doubt) (citing Watts v. Singletary, 87 F.3d 1282, 1288 (11th Cir. 1996); Thomas v. Snyder, No. CIV. A. 98-234-GMS, 2001 WL 1297812, at *6 (D. Del. Oct. 3, 2001) ("[D]uring his plea colloquy, Thomas stated that he understood the charges and the terms of his agreement.  Thomas' rational and coherent answers which were transcribed during his plea and sentencing hearings do not demonstrate that he lacked an ability to consult with his lawyer with a reasonable degree of rational understanding or that he lacked a rational and factual understanding of the proceedings.").  Even if Cornwell's performance was deficient for failing to raise the competency issue, defendant has not shown prejudice, i.e., "a reasonable probability that a psychological evaluation would have revealed that he was incompetent." Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir. 1988) (citing Adams v. Wainwright, 764 F.2d 1356, 1367 (11th Cir. 1985)).

C.   Failure To Prepare And Advise – Plea Hearing And Sentencing Hearing

Defendant argues that Mr. Cornwell did not adequately prepare for the plea and sentencing hearings and as a result did not adequately advise defendant.

1.  *Advice Regarding Plea Hearing*

Defendant asserts that when he entered his guilty plea, as a result of Mr. Cornwell's erroneous advice, he believed that the penalty would be 37 months. See Doc. #120 at 14.  He asserts that he would not have pled guilty had he known that he could receive more than a five-year sentence.  The record, however, belies this assertion.  During the plea colloquy, the Court made absolutely clear to defendant that under the plea agreement the lowest possible sentence that he could receive was the five year statutory minimum.  The Court also made it clear that the sentence

would take into account his relevant conduct, which could result in a maximum sentence of 240 months.  See Transcript of Change of Plea Hearing (Doc. #103) at 5-6, 17-20, 21-22, 26-27, 44.

At the plea hearing, Mr. Cornwell spoke privately with defendant and told the Court that defendant was concerned about relevant conduct because "these women are going to come in and what they're going to say . . . and he wasn't on their Indictment, they weren't on his indictment.  I've tried to explain to him that it doesn't really matter."  Doc. #103 at 21.  The Court determined that Mr. Cornwell was referring to the fact that the potential witnesses were charged in a different conspiracy.  Id. at 22.  After speaking with his client, Mr. Cornwell explained that defendant wanted Mr. Cornwell to tell him exactly "what he was looking at" and that "I don't have my crystal ball." Id. at 23.  The Court again explained to defendant that the amount of drugs would be based on the presentence investigation, and that counsel could not predict that amount with certainty.

The Court proceeded with the standard plea colloquy, which assumes that counsel will sometimes fail to correctly predict a defendant's sentence.  The Court explained the presentence investigation process to defendant, emphasized the uncertainty in the numbers and stated that "there's no guarantee," id. at 26.  The Court asked defendant if his plea was free and voluntary.  He indicated that no one had forced or threatened him to enter the plea, and that the only reason he was making a plea was that he was in fact guilty as charged.  Toward the end of the hearing, Mr. Cornwell stated that defendant was "looking at potential 240 months and we may get down to 60. . . . so I think it's the best thing he can do."  The Court stressed to defendant the fact that the Court has ultimate discretion in sentencing, and that unhappiness with a sentence is not a basis to withdraw a guilty plea.  Defendant indicated that he understood, that he wanted to go forward and that he was satisfied with Mr. Cornwell's advice and representation.

Based on the plea hearing, defendant fully understood that he was subject to a maximum

sentence of 240 months and that counsel's predictions and assumptions concerning a lesser sentence could be wrong and that any such errors could have a dramatic impact on his sentence. Absent a believable reason justifying departure from their apparent truth, the accuracy and truth of an accused's statements at a Rule 11 proceeding at which his plea is accepted are conclusively established. United States v. Glass, 66 F. App'x 808, 810 (10th Cir. June 3, 2003). Defendants sometimes receive less time than counsel predict, sometimes more. An attorney miscalculation or erroneous sentence estimate by itself does not establish constitutionally deficient performance. United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); see United States v. Melcher, No. 10-504, 2010 WL 1971913, at *2 (10th Cir. May 18, 2010) (performance not deficient; prediction of 200 months, sentence of life in prison). Defendant's conclusory *after the fact* statement that his counsel had actually told him that he would receive a sentence of 37 months is insufficient to establish that counsel's performance was deficient.[5]

---

[5]   Moreover, to show prejudice in the guilty plea context, defendant must show a reasonable probability that but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. United States v. Silva, 430 F.3d 1096, 1099 (10th Cir. 2005). As part of his proof, defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). Defendant's mere assertion that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. Miller v. Champion, 262 F.3d 1066,1072 (10th Cir. 2001); United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993). Instead, the Court evaluates the factual circumstances surrounding the plea to predict "whether the outcome of the district court proceedings would have been different if his counsel had not committed the alleged errors." United States v. Clingman, 288 F.3d 1183, 1186 (10th Cir. 2002); see Miller, 262 F.3d at 1072 (court examines factual circumstances surrounding plea to determine whether petitioner would have proceeded to trial). While defendant need not show that he would have prevailed at trial, his prospects of succeeding inform the Court's view whether he in fact would have gone to trial absent the alleged errors. United States v. Triplett, 263 F. App'x 688, 690 (10th Cir. 2008); see Clingman, 288 F.3d at 1186. The strength of the government's case is often the best evidence whether defendant in fact would have changed his plea and insisted on going to trial. See Hill v. Lockhart, 474 U.S. at 59-60.

In light of the factual basis set forth in the plea agreement, as well as the testimony of witnesses at the sentencing hearing, defendant has not shown a reasonable probability that but for

(continued...)

2. *Failure To Prepare And Advise For Sentencing Hearing*

After the plea hearing, the Probation Office prepared the Initial PSR (Doc. #32) which held defendant accountable for 41.08 net grams of cocaine base and set the base offense level at 26 under U.S.S.G. § 2D1.1(c)(7).  Doc. #32 at 6-7,  ¶ ¶ 19, 25.  The Initial PSR then applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for a firearm possessed in connection with the charged crime.  Id. at 8, ¶ 26.  A three-level reduction for timely acceptance of responsibility produced a total offense level of 25.  Id. at 8, ¶¶ 31-35.  Together with a criminal history category of III, this yielded an advisory guideline range of 70 to 87 months imprisonment.  Id. at 18, ¶ 77.

Defendant objected to the drug quantity calculation and the gun enhancement.  In response to those objections, at the sentencing hearing on June 22, 2011 the government presented testimony from Tynisha Mays, defendant's former girlfriend, and Lakisha Wesley, Ms. Mays' sister.  Their testimony connected defendant to numerous drug sales and the firearm.  Defendant then took the stand and on cross-examination admitted many of the drug sales.  Based on the evidence presented at this hearing, the Court requested an amended PSR and continued sentencing to July 6, 2011.

On June 30, 2011, the probation office issued the Amended PSR (Doc. #41) which held defendant accountable for at least 840 grams of cocaine base and set the base offense level at 34 under U.S.S.G. § 2D1.1(c)(7).  Doc. #41 at 6-9, ¶¶ 21, 22; id. at 7, ¶ 25.  The Amended PSR applied the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for a firearm.  Id. at 10, ¶ 31. It added a two-level enhancement for obstruction of justice based on a finding that defendant had testified falsely about material relevant conduct.  Id. at 10-11, ¶ 35.  For the same reason, defendant received

---

[5](...continued)
counsel's alleged conduct, the results of the plea proceeding would have been different, i.e. that he would not have agreed to plead guilty.  See United States v. Young, 206 F. App'x. 779, 785 (10th Cir. 2006).

no reduction for acceptance of responsibility.  Id. at 11, ¶ 36.  The Total Offense level was thus 38. Together with a criminal history category of III, this yielded an advisory guideline range of 292 to 365 months in prison.  Id. at 21, ¶ 81.[6]

In sentencing defendant, the Court acknowledged the dramatic increase in the Guidelines sentencing range.  The Court sustained some objections to the drug quantity calculation and assigned a base offense level of 32.  The Court applied the two-level enhancement for a firearm.  The Court also added a two-level enhancement for obstruction, finding that defendant had testified falsely at the evidentiary hearing about material relevant conduct.  The Court found that defendant was not entitled to a two-level acceptance of responsibility reduction.  The Court thus found a Total Offense Level of 36.

Defendant essentially asserts that Mr. Cornwell did not adequately advise him about the risk of filing objections to the original PSR.  In hindsight, counsel's decision to challenge the original presentence report did not help defendant, particularly in light of defendant's false testimony.  At the sentencing hearing on June 22, 2011, however, Mr. Cornwell clearly cautioned defendant about the possibilities of losing the adjustment for acceptance of responsibility and gaining an obstruction of justice adjustment if he testified.  Moreover, the government very clearly warned defendant that the drug amount could increase considerably based upon the testimony which the government was about to introduce.  Defendant elected to proceed.

Defendant also argues that the testimony of Mays and Wesley was unreliable and therefore the Court erred in determining drug quantity based on their testimony.[7]  The Court may estimate

---

[6]     The Court ultimately applied a Total Offense Level of 36.

[7]     On March 4, 2015, over seven months after he filed his Section 2255 motion, defendant filed a Motion To Alter Or Amend Section 2255.  See Doc. #137.  In his motion to amend,
(continued...)

drug quantity for sentencing purposes, however, so long as the information relied on "has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." United States v. French, 296 F. App'x 716, 720 (10th Cir. 2008) (inclusion of additional drug quantity erroneous where witness testified to weekly sales of heroin but testimony was vague as to quantities; agents estimated 80 grams based on assumption witness purchased five grams for 16 weeks and government presented no corroborating evidence). The Court found Mays and Wesley credible, and found defendant's testimony incredible and false. To the extent that defendant testified falsely, he has himself, rather than his lawyer, to blame.

D.   Failure To Investigate, Interview Witnesses And Review Government Files

Defendant suggests that Mr. Cornwell should have investigated and interviewed other witnesses. He does not identify the witnesses Mr. Cornwell should have investigated or procured.[8]

---

[7](...continued)

defendant notes that after he filed his Section 2255 motion, the Court granted his motion to reduce his sentence under Amendment 782. Defendant asserts that despite the sentence reduction, his conviction and sentence are defective because the Court should have sentenced him based on the amount of drugs for which the original presentence report found him responsible.

Section 2255 provides a one-year period of limitation which ordinarily runs from the date on which the judgment of conviction becomes final. See 28 U.S.C. § 2255. Rule 15, Fed. R. Civ. P., governs a motion to amend a Section 2255 petition if it is made before the one-year limitation period for filing a Section 2255 petition has expired. United States v. Ohiri, 133 Fed. Appx. 555, 559 (10th Cir. 2005).

Here, the Tenth Circuit entered the mandate on September 27, 2013. Defendant had 90 days from that date to file a petition for writ of certiorari with the Supreme Court, but did not do so. See Clay v. United States, 537 U.S. 522, 524-25 (2003). Defendant filed his motion to amend his Section 2255 motion on March 4, 2015 – well after the statutory deadline.

In the district court's discretion, an untimely amendment to a Section 2255 motion which clarifies or amplifies a claim or theory in the original motion by way of additional facts may relate back to the date of the original motion if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case. United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000). Here, the Court sustains defendant's motion to amend because it is limited to the claims in his original motion.

[8]     Defendant's claim is vague, but to the extent he implies that counsel failed to
(continued...)

Defendant also asserts that Mr. Cornwell did not adequately review government files and that if he had done so, he would have discovered that although Mays and Wesley testified that he engaged in a conspiracy to distribute crack cocaine while he was in jail in Wyandotte County, Kansas, defendant was actually in county jail in Missouri.  Defendant asserts that if Mr. Cornwell had adequately investigated the case and reviewed government files, he could have challenged the false testimony of Mays and Wesley.

Assuming without deciding that Mr. Cornwell's performance was deficient in investigating and reviewing the government file, defendant has not alleged sufficient facts to show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  The Court heard the testimony of Mays and Wesley, as well as that of defendant.  The Court found defendant not credible, and credited the testimony of Mays and Wesley.  The Court's review of the testimony of Mays, Wesley and defendant does not change the Court's earlier conclusion.  Even if Mr. Cornwell had produced evidence that the testimony of Mays and Wesley was erroneous in some way, the Court would not have disregarded their testimony as a whole.  Defendant therefore cannot show that the results of the proceeding would have been different.

---

[8](...continued)
interview or subpoena witnesses, he must provide an affidavit of the potential witness as to the nature of the proposed testimony.  See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (to show ineffective assistance, evidence about testimony of putative witness must generally be presented by witness testimony or affidavit); Sanders v. Trickey, 875 F.2d 205, 210-11 (8th Cir. 1989) (failure to provide affidavit from witness regarding potential testimony precludes finding of prejudice); United States v. Anderson, No. 95-20086-JWL, 2003 WL 22757928, at *3 (D. Kan. Nov. 6, 2003) (Section 2255 movant required to submit affidavit of putative witness); United States v. Cosby, 983 F. Supp. 1022, 1026 (D. Kan. 1997) (prejudice not established where defendant did not submit affidavit of potential alibi witnesses).

**IV.     Whether The Court Imposed An Illegal Sentence**

Defendant asserts that the Court imposed an illegal sentence.  The government asserts that defendant waived his right to appeal or collaterally attack his sentence.  Specifically, in the plea agreement defendant agreed that he knowingly waived any right to appeal or collaterally attack the "prosecution, conviction and sentence."  Doc. #30, ¶ 11.  In reviewing appeal waivers, the Tenth Circuit determines  (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.  United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004).  Likewise, "a defendant's waiver of his collateral rights brought under § 2255 is generally enforceable, where the waiver is expressly stated in the plea agreement and where both the plea and waiver are knowingly and voluntarily made.  Of course, the same exceptions to the waiver of the right to appeal, if they arise, would be available to the waiver of the right to collateral attack."  United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001).  Thus, enforcement of an appellate waiver may result in a miscarriage of justice in one of four situations: (1) the district court relied upon an impermissible factor such as race; (2) defendant received ineffective assistance of counsel in plea negotiations, rendering the waiver invalid; (3) defendant's sentence exceeded the statutory maximum; or (4) the waiver is otherwise unlawful and seriously affects the fairness, integrity or public reputation of judicial proceedings.  Hahn, 359 F.3d. at 1327. Id.

An analysis of these factors supports the conclusion that the waiver provision in the plea agreement should be enforced.  First, defendant does not allege, and the record does not suggest, that the Court based the sentence on any impermissible factors.  Second, Mr. Cornwell effectively negotiated the plea agreement as evidenced by defendant's understanding of the terms and

conditions during the change of plea hearing.  As noted above, the Court thoroughly questioned defendant regarding his knowledge of and agreement to the terms of the plea agreement. The Court specifically inquired about defendant's understanding of his waiver of the right to appeal and to collaterally attack his conviction and sentence.  Defendant stated that he understood and agreed with the terms under which he was entering his plea.  In his petition to enter a guilty plea defendant acknowledged  that he was in fact guilty of the crime charged.  On direct appeal, the Tenth Circuit found that Mr. Cornwell was not ineffective in negotiating the waiver of the right to appeal or to file a collateral attack.

Third, the Court imposed a sentence which was well below the statutory maximum.  Fourth, defendant does not suggest that the waiver is otherwise unlawful.  The Court therefore finds that defendant waived his right to collaterally attack his sentence.

## V.       Ineffective Assistance Of Appellate Counsel

Defendant finally asserts that his appellate counsel was ineffective for failing to raise each of the issues set forth above.  Because the Court has found no merit in any of these issues, defendant cannot show prejudice.  Therefore he is not entitled to relief on his claim of ineffective assistance of appellate counsel.

## Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which are not directly refuted by the record or if true, would entitle him to relief.  Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *2-3 (10th Cir. Sept. 2, 1997) (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); United States v. Barboa, 777 F.2d 1420, 1422-23

(10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

### Certificate Of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[9] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. §2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #120) filed July 23, 2014 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Alter Or Amend Section 2255 (Doc. #137) filed March 4, 2015 be and hereby is **SUSTAINED**.

---

[9]      The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability.  See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

**IT IS FURTHER ORDERED** that defendant's Motion For Discovery (Doc. #139) filed

April 1, 2015 be and hereby is **OVERRULED**.

Dated this 15th day of October, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge
