### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **No. 10-20128-01-KHV** |
| **TIJUAN A. LEE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

On March 20, 2012, the Court sentenced defendant to 235 months in prison. On February 9, 2015, the Court reduced defendant's sentence to 188 months under Amendment 782 to the Sentencing Guidelines. This matter is before the Court on defendant's <u>Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) [And] Compassionate Release</u> (Doc. #170) filed July 20, 2020, which seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic. On August 11, 2020, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant. For reasons stated below, the Court dismisses defendant's motion.

## Factual Background

On October 7, 2010, a grand jury charged defendant with conspiracy to distribute 50 grams or more of cocaine base (Count 1), being a felon in possession of a firearm (Count 2) and three counts of distribution of cocaine base (Counts 3–5). On February 25, 2011, defendant pled guilty to one count of a superseding information which charged him with conspiracy to manufacture, to possess with intent to distribute and to distribute five grams or more of cocaine base, in violation

of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).

The Presentence Investigation Report ("PSR") (Doc. #41) found defendant responsible for at least 840 grams but less than 2.8 kilograms of cocaine base for a base offense level of 34 under the United States Sentencing Guidelines ("U.S.S.G."), Section 2D1.1(c)(4).  See PSR (Doc. #41) filed June 30, 2011, ¶ 30.  At sentencing, out of an abundance of caution, the Court found a base offense level of 32 because defendant was responsible for at least 280 grams but less than 840 grams of cocaine base.  See Statement Of Reasons (Doc. #96) filed March 20, 2012 at 1. The Court enhanced defendant's offense level two levels because he possessed a firearm during the offense and two additional levels for obstruction of justice because he testified falsely at sentencing.  PSR (Doc. #41), ¶¶ 24–26, 31, 34.  Defendant had a total offense level of 36 with a criminal history category III for a Guidelines range of 235 to 293 months.  Id., ¶ 81.

On March 20, 2012, the Court sentenced defendant to 235 months in prison and five years of supervised release.  See Judgment In A Criminal Case (Doc. #95) at 2–3.  Defendant appealed. On September 5, 2013, the Tenth Circuit affirmed.  See Order And Judgment (Doc. #118).

On February 9, 2015, the Court reduced defendant's sentence to 188 months under Amendment 782 to the Sentencing Guidelines.  See Order Regarding Motion For Sentence Reduction Pursuant To 18 U.S.C. § 3582(c)(2) (Doc. #136).

The Court overruled defendant's initial motion to vacate his sentence under 28 U.S.C. § 2255, and the Tenth Circuit denied a certificate of appealability.  See Order Denying Certificate Of Appealability (Doc. #147) filed March 4, 2016; Memorandum And Order (Doc. #140) filed October 15, 2015.  The Court likewise dismissed defendant's successive motions for relief under Section 2255.  See Memorandum And Order (Doc. #159) filed July 28, 2017; Memorandum And

Order (Doc. #150) filed October 25, 2016.

Defendant currently is confined at FCI Sandstone, a BOP facility in Sandstone, Minnesota. FCI Sandstone houses 968 inmates. See BOP, FCI Sandstone, https://www.bop.gov/locations/institutions/sst (last visited Oct. 9, 2020). As of October 8, 2020, 165 inmates at FCI Sandstone had tested positive for COVID-19. See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited Oct. 9, 2020). See id. Some 105 of the 165 inmates who tested positive have recovered. See id.

Defendant is 41 years old. Defendant states that because he is a smoker and has asthma, a heart condition, a sleeping disorder and an intellectual disability, he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it. With good time credit, defendant's projected release date is May 23, 2024. Defendant asks the Court to grant compassionate release.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Defendant seeks compassionate release because of various health conditions

and the COVID-19 pandemic. For reasons stated below, the Court lacks jurisdiction because (1) defendant has not exhausted administrative remedies and (2) he has not established extraordinary and compelling reasons for his release.

## I.     Exhaustion Of Administrative Remedies

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A).  As to the second alternative, a "lapse" refers to the failure of the warden to respond to defendant's request. See United States v. Abdeljawad, No. 15-CR-3394 WJ, 2020 WL 4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); United States v. Saenz, No. 97CR2106-JLS, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020) (no "lapse" occurred because warden acted on defendant's request); United States v. Miller, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) ("lapse" means warden must fail to act on request for period of 30 days); see also *lapse*, Black's Law Dictionary 885 (7th ed. 1999) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred").  In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court.  See United States v. Valenzuela, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination); United States v. Van Sickle, No. CR18-0250JLR, 2020 WL 3962225, at *3 (W.D. Wash. July 13, 2020)

(despite urgency created by COVID-19, defendant must exhaust administrative remedies within BOP before filing motion in court).  But see United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020) (statute allows defendant to file motion 30 days "after the warden receives his request"); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

The administrative exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional. United States v. Scott, No. 16-10003-02-EFM, 2020 WL 5513616, at *1 (D. Kan. Sept. 14, 2020); see United States v. Read-Forbes, No. 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (analyzing "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).  Defendant alleges that he has satisfied the exhaustion prerequisite because the warden denied his written request for compassionate release.  Response To Government [Response] (Doc. #181) filed September 24, 2020 at 4–5.  The record reflects that defendant submitted a request on May 18, 2020, which the warden denied on May 21, 2020.  Motion To Reduce Sentence (Doc. #170) at 8–9.  Defendant received the warden's denial on June 16, 2020.  Response To Government [Response] (Doc. #181) at 3.  Defendant submitted a second request which a BOP staff member received on June 15, 2020 and the warden denied on June 30, 2020.  Motion To Reduce Sentence (Doc. #170) at 5–7.  In both denial letters, the warden advised defendant that he had the right to file an administrative appeal, but he did not do so.  Instead, on July 20, 2020, defendant filed a motion for compassionate release.  Because defendant did not appeal the warden's denial of his request, he has not fully exhausted all administrative appeal rights.  Accordingly, the Court lacks

jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.  See Read-Forbes, 2020 WL 1888856, at *4.  In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.  Malouf v. SEC, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).  The COVID-19 pandemic is no exception.  See Alam, 960 F.3d at 831, 833–36 (enforcing mandatory exhaustion requirement despite seriousness of COVID-19 and its spread in prisons); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing compassionate release at this point).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP his request for a reduced sentence.  The exhaustion requirement helps prevent premature claims and ensures that the agency which possesses the most expertise is given the first shot at resolving defendant's request.  See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); see also Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.").  Because defendant is in BOP custody, the BOP is in a better position to initially

determine his medical needs, his specific risk of COVID-19 and the risk to inmates generally at FCI Sandstone, the risk to the public if he is released and whether his release plan is adequate. See United States v. Epstein, No. CR 14-287-FLW, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); see also Alam, 960 F.3d at 835 (preventing prisoners seeking relief because of COVID-19 from charging straight to federal court helps prison administrators prioritize most urgent claims and ensure that they can investigate gravity of conditions supporting compassionate release and likelihood that conditions will persist); United States v. Dickson, No. 19-CR-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (BOP better positioned to understand inmate health and circumstances relative to entire prison population and identify extraordinary and compelling reasons for release).   Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2).

## II.     Extraordinary And Compelling Reasons For Release

Even if defendant had exhausted administrative remedies, he has not shown "extraordinary and compelling reasons" for release.  Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).   Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.  U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).[1]  In addition, the policy statement requires that before granting

---

[1] Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—
  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—
    (I) suffering from a serious physical or medical condition,
    (II) suffering from a serious functional or cognitive impairment, or
    (III) experiencing deteriorating physical or mental health because of the aging process,
  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(continued . . .)

relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)). In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release. See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)). Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request. See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based in part on his medical conditions and the risk that he will contract COVID-19 at FCI Sandstone. Subsection (A) of the Section 1B1.13

---

[1](. . . continued)

(C) Family Circumstances.
   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1 (Nov. 2018).

commentary does not apply because unless and until defendant contracts COVID-19, none of his stated medical conditions limit his ability to provide self-care within the prison environment. Subsections (B) and (C) also do not apply. See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age); id., cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver). Accordingly, for defendant to establish extraordinary and compelling reasons for release based on his medical conditions, intellectual disability and the risk of contracting COVID-19, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D). To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)). Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference." Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the

Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP." U.S.S.G. § 1B1.13, cmt. n.1(D). In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination. See Saldana, 807 F. App'x at 819–20.[2] The Court likewise concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Brooker, No. 19-3218-CR, --- F.3d ----, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020) (because Section 1B1.13 not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district court discretion to consider whether any reasons extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very

---

[2] In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range. See id. In affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision. See id.

marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *extraordinary*, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting *compelling*, Webster's Third International Dictionary, Unabridged (2020)). As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence. See Saldana, 807 F. App'x at 819.

Here, defendant seeks release because of his medical conditions, intellectual disability and status as a smoker. Defendant is 41 years old. The PSR notes that in 2011, defendant reported that he was in good physical health, except that he had sleep apnea and asthma. PSR (Doc. #41), ¶ 72. Defendant asserts that he suffers from an intellectual disability, but as an adult, he apparently has not received treatment for any mental or emotional health condition. Id., ¶ 73. BOP medical records do not indicate that defendant has a heart condition other than a heart murmur as a child, which did not require treatment. See Motion To Reduce Sentence (Doc. #170) at 15. In January of 2017, defendant sought medical treatment for chest pains, but his cardiovascular system was within normal limits with no tachycardia or irregular rhythm. Id. at 16. The registered nurse found no significant findings and no apparent distress. Id. at 17. On March 14, 2019, defendant told a medical provider that he has sleep paralysis, but BOP records do not reflect that the condition has had any adverse impact on his health. Id.

Defendant argues that because of the poor conditions at FCI Sandstone including a dormitory-style living arrangement, he is at risk of contracting COVID-19. FCI Sandstone had a COVID-19 outbreak in the past few weeks, but no inmates have died and 105 of the 165 inmates

who tested positive have recovered. Defendant has not shown that compared to his proposed placement in the community, he faces a heightened or imminent risk of exposure to COVID-19 at FCI Sandstone. See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).

Defendant's medical conditions, intellectual disability, status as a smoker and the conditions at FCI Sandstone, both individually and collectively, do not constitute extraordinary and compelling reasons for his release. Likewise, defendant has not established that the nonexclusive factors in BOP Program Statement 5050.50 compel his release. COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters. Even so, the risk that COVID-19 may spread further at FCI Sandstone cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." Raia, 954 F.3d at 597.

Even if defendant's medical conditions, intellectual disability, status as a smoker, the conditions at FCI Sandstone and the COVID-19 pandemic were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553. A sentence of time served, or approximately 120 months, is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public. In particular, defendant committed a significant drug trafficking offense. As part of the offense conduct, defendant was responsible for more than 280 grams of cocaine base and possessed a firearm. See Statement Of Reasons (Doc. #96) at 1; PSR (Doc. #41), ¶ 31. He also

testified falsely at sentencing, which warranted a two-level enhancement of his offense level for obstruction of justice.  See PSR (Doc. #41), ¶¶ 24–26, 34.  A reduction of defendant's sentence to approximately 120 months would reflect a significant disparity from his current sentence of 188 months, the low end of his Guidelines range.  See Order Regarding Motion For Sentence Reduction Pursuant To 18 U.S.C. § 3582(c)(2) (Doc. #136) at 1.

The Court recognizes that defendant has participated in a number of BOP programs.  He apparently has made progress toward rehabilitation.  Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant's medical conditions, intellectual disability, status as a smoker, the conditions at FCI Sandstone and the ongoing COVID-19 pandemic are not "extraordinary and compelling" reasons that warrant his release under Section 3582(c)(1)(A).  Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.  See Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) [And] Compassionate Release (Doc. #170) filed July 20, 2020 is **DISMISSED**.

Dated this 9th day of October, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
